**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CAMPAIGN LEGAL CENTER
1411 K Street NW, Suite 1400
Washington, DC 20005,

               Plaintiff,

               v.

DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530,

               Defendant.

Civil Action No.

**<u>COMPLAINT FOR INJUNCTIVE RELIEF</u>**

(1)     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks injunctive and other appropriate relief to compel Defendant Department of Justice to disclose requested records.

**<u>Jurisdiction and Venue</u>**

(2)     This court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**<u>The Parties</u>**

(3)     Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization that works to strengthen American democracy through, among other activities, local, state, and federal efforts to ensure that the public has access to information regarding the

1

financing of our election campaigns and the influence campaign donations have on governmental

policy decisions. As part of this effort, CLC conducts research, authors reports and articles, and

regularly provides expert analysis to the media. CLC is also involved in litigation throughout the

country regarding campaign finance matters, participates in rulemaking and advisory opinion

proceedings before the Federal Election Commission ("FEC") to ensure that the agency is

properly interpreting and enforcing federal election laws, and files FEC complaints requesting

that enforcement actions be taken against individuals or organizations that violate the law. To

support these efforts and to educate the public, CLC regularly seeks information under FOIA

regarding federal agency decisionmaking.

(4)     Defendant Department of Justice ("DOJ") is a department of the Executive

Branch of the United States Government. The Office of the Inspector General ("OIG") and the

Office of Legal Counsel ("OLC") are offices within defendant DOJ, and the Federal Bureau of

Prisons ("BOP") is a component of defendant DOJ. Defendant DOJ is an "agency" within the

meaning of 5 U.S.C § 552(f).

## Background

(5)     In August 2016, the DOJ OIG issued a report concluding that "contract prisons

incurred more safety and security incidents per capita than comparable BOP institutions."[1]

(6)     The OIG report highlighted in particular the problems at private prisons operated

by GEO Group Inc. ("GEO Group"), one of the largest private prison contractors. Specifically,

the report noted that GEO Group's "contract prisons had more incidents per capita compared to

those operated by [other contractors] for contraband finds, several types of reports of incidents,

---

[1]     Office of Inspector General, U.S. Dep't of Justice, *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons* at 2 (Aug. 2016), https://oig.justice.gov/reports/2016/e1606.pdf#page=2.

lockdowns, guilty findings on inmate discipline charges, positive drug test results, and sexual misconduct."[2]

(7)     On August 18, 2016, then-Deputy Attorney General Sally Yates issued a memo instructing the Bureau of Prisons to phase-out the use of privately operated correctional facilities, writing that private prisons "compare poorly to our own Bureau facilities" and "do not provide the same level of correctional service, programs, and resources; . . . do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, . . . do not maintain the same level of safety and security."[3]

(8)     The next day, August 19, 2016, GEO Group's wholly-owned subsidiary, GEO Corrections Holdings, Inc., contributed $100,000 to Rebuilding America Now, a "super PAC" supporting Donald Trump's campaign for president.

(9)     Rebuilding America Now had the blessing of the Trump campaign as one of its preferred super PACs. According to media reports, President Trump's then-campaign manager, Paul Manafort, called into a July 2016 meeting with top donors to Rebuilding America Now informing them that they were the only super PAC he was addressing.[4]

(10)     At the same meeting of the super PAC's donors, attendees were shown a quote from then-Governor Mike Pence, who stated that "[s]upporting Rebuild [*sic*] America Now is one of the best ways to stop Hillary Clinton and help elect Donald Trump our next president!"[5]

---

[2]     *Id.* at 15.

[3]     *See* Memorandum from Sally Q. Yates (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.

[4]     Alex Isenstadt and Kenneth P. Vogel, *Trump Blesses Major Super PAC Effort*, Politico (July 20, 2016), http://www.politico.com/story/2016/07/trump-super-pac-donors-225892.

[5]     *Id.* The Politico article mistakenly quotes Pence as referring to "Rebuild America Now"; the link to the slide shown at the meeting shows the actual quote, which referred to Rebuilding

(11)     Federal law prohibits a federal contractor from "directly or indirectly . . . mak[ing] any contribution of money or other things of value, or . . . promis[ing] expressly or impliedly to make any such contribution . . . to any person for any political purpose or use." 52 U.S.C. § 30119(a)(1). Federal law likewise prohibits any person from "knowingly . . . solicit[ing] any such contribution for any such person for any such purpose." *Id.* § 30119(a)(2).

(12)     On November 1, 2016, CLC and an individual, Catherine Hinckley Kelley, filed a complaint with the FEC against Rebuilding America Now and GEO Corrections Holdings, Inc., seeking enforcement for apparent violation of the ban on federal contractor donations.[6] The same day, GEO Corrections Holdings, Inc. contributed an additional $125,000 to Rebuilding America Now.

(13)     On February 21, 2017, two weeks after being confirmed, Attorney General Jeff Sessions issued a memo rescinding the August 18, 2016 directive from Ms. Yates to phase-out the use of private prisons.

(14)     Attorney General Sessions's single-paragraph memo stated that Ms. Yates' decision "changed long-standing policy and practice, and impaired the Bureau's ability to meet the future needs of the federal correctional system," and he thus "direct[ed] the Bureau to return to its previous approach."[7]

---

America Now. *See* http://static.politico.com/82/37/a220e5774f6e893fadcc4d48abfe/rebuilding-america-now-pac-slide.jpg.

[6]     *See* Complaint, http://www.campaignlegalcenter.org/sites/default/files/11-01-16%20Rebuilding%20America%20Now%20Contractor%20Complaint.pdf.

[7]     *See* Memorandum from Jefferson B. Sessions III (Feb. 21, 2017), https://www.bop.gov/resources/news/pdfs/20170224_doj_memo.pdf.

(15)     Attorney General Sessions' rescission of the earlier memo attracted significant attention among the press and public,[8] and caused the stock prices of private prisons to rise significantly.[9] Many news reports pointed out that the private prison companies, including GEO Group, that benefitted from the policy reversal had financially supported President Donald Trump's campaign and inauguration.[10]

(16)     In April 2017, GEO Group was awarded a $110 million contract to build the first immigrant detention center under the Trump administration.[11]

**Plaintiff's FOIA Requests and Defendant's Responses**

(17)     By letter to DOJ dated February 28, 2017 (addressed to the Office of the Attorney General, the Office of Legal Counsel, BOP, OIG, and the Office of Public Affairs ("OPA")), plaintiff requested records pertaining to how and why DOJ reversed its decision to phase-out the

---

[8]     *E.g.*, Eric Lichtblau, *Justice Department Keeps For-Profit Prisons, Scrapping an Obama Plan*, N.Y. TIMES (Feb. 23, 2017), https://www.nytimes.com/2017/02/23/us/politics/justice-department-private-prisons.html; Jon Schuppe, *Private Prisons: Here's Why Sessions' Memo Matters*, NBC NEWS (Feb. 26, 2017), http://www.nbcnews.com/news/us-news/private-prisons-here-s-why-sessions-memo-matters-n725316; Christopher Dean Hopkins, *Private Prisons Back in Mix for Federal Inmates as Sessions Rescinds Order,* NPR (Feb. 23, 2017) http://www.npr.org/sections/thetwo-way/2017/02/23/516916688/private-prisons-back-in-mix-for-federal-inmates-as-sessions-rescinds-order

[9]     Robert Martin, *The GEO Group, Corecivic Inc Up on Sessions Memo*, NASDAQ (Feb. 23, 2017), http://www.nasdaq.com/article/the-geo-group-inc-geo-corecivic-inc-cxw-up-on-sessions-memo-cm752487

[10]     *E.g.*, Fredereka Schouten, *Private Prisons Back Trump and Could See Big Payoffs With New Policies*, USA Today (Feb. 23, 2017) http://www.usatoday.com/story/news/politics/2017/02/23/private-prisons-back-trump-and-could-see-big-payoffs-new-policies/98300394/; Betsy Woodruff, *Trump Moves to Make Private Prisons Great Again,* DAILY BEAST (Feb. 23, 2017) http://www.thedailybeast.com/articles/2017/02/23/trump-moves-to-make-private-prisons-great-again.html, David Dayen, *Memo Restoring Use of Private Prisons Is Good News for One Company*, THE NATION (Feb. 24, 2017), https://www.thenation.com/article/memo-restoring-use-of-private-prisons-is-good-news-for-one-company/

[11]     Meredith Hoffman, *Immigrant Detention Center to Be Built in Texas for $110M*, ASSOCIATED PRESS (Apr. 13, 2017), https://www.usnews.com/news/best-states/texas/articles/2017-04-13/texas-getting-first-immigrant-lockup-built-under-trump.

use of private prisons and the relationship between that decision and the financial support GEO

Group and its subsidiary GEO Corrections Holdings, Inc. provided Rebuilding America Now

and President Trump's inauguration.

(18)     Specifically, plaintiff's February 28, 2017 request sought:

1.     "All factual materials, reports, and other evidence that the DOJ considered
       in reaching its conclusion to rescind the August 18, 2016 memo on private
       prisons";

2.     "All correspondence with David Stewart";

3.     "All correspondence with Ryan Robichaux";

4.     "All correspondence with Michael Scrivner";

5.     "All correspondence with Peter Leon";

6.     "All correspondence with Leo Aguirre";

7.     "All correspondence with Mark Smith"; and

8.     "All records that mention 'Rebuilding America Now.'"

*See* Ex. 1 (2/28/17 FOIA Letter).

(19)     Plaintiff's February 28, 2017 letter noted that its request encompassed both

physical and digital records, including emails sent or received on governmental email addresses

as well as all other email addresses and accounts used to conduct official business.

(20)     The letter also provided a limited timeframe for plaintiff's requests—November

9, 2016 to February 21, 2017.

(21)     Plaintiff's February 28, 2017 letter also requested that any search, review, or

duplication fees associated with its FOIA request be "without or at a reduced charge" pursuant to

5 U.S.C. §§ 552(a)(4)(A)(iii) and (a)(4)(A)(ii)(II)-(III). Plaintiff sought theses waivers because it

has no commercial interest in the information, will use the information to inform the public about

6

the operations of government, and qualifies as a representative of the news media. *See* Ex. 1 at III.A-B.

(22)     Plaintiff also sought expedited processing of its request pursuant to 28 C.F.R. § 16.5(e)(1)(iv) because the information sought involves a matter of exceptional media interest and "DOJ's sudden reversal of a policy first established in response to safety and security concerns raises questions about the government's integrity which can affect public confidence." Ex. 1 at IV.

(23)     By email and telephone exchanges with BOP on March 1, 2017, plaintiff clarified that its request was properly directed to BOP in addition to DOJ and the Office of the Attorney General, and clarified that it also sought "[a]ll inquiries to the BOP from the Attorney General's Office pertaining to the August 18, 2016 memo on private prisons, and all BOP responses to those inquiries" for the same November 9, 2016 to February 21, 2017 timeframe. *See* Ex. 2 (3/1/17 Emails with BOP).

(24)     On March 2, 2017, BOP sent plaintiff an email with an attached letter acknowledging receipt of the request and assigned it FOIA number 2017-03002.

(25)     On March 7, 2017, OIG sent plaintiff an email with an attached letter acknowledging receipt of the FOIA request and assigned it control number 17-OIG-143.

(26)     On March 24, 2017, OLC sent plaintiff an email with an attached letter acknowledging receipt of the FOIA request and assigned it tracking number FY17-134. OLC also noted that on March 22, 2017, OPA had granted plaintiff's request for expedited processing pursuant to 28 C.F.R. § 16.5(e)(2).

(27)     On April 13, 2017, plaintiff sent an email to OIG and OLC seeking a status update regarding its request.

(28)     On April 14, 2017, OLC Paralegal and FOIA Specialist Melissa Golden replied to plaintiff's April 13, 2017 email to OLC stating that, despite the grant of expedited processing, "our best estimate is that we hope to complete the processing of your request by the *end of the calendar year*" (emphasis added). Plaintiff did not receive a response from OIG.

(29)     On May 15, 2017, plaintiff left a voicemail message with BOP FOIA Public Liaison, Mr. C. Darnell Stroble, seeking a status update on its request. The next day, May 16, Linda Bowe from BOP's Central Office called plaintiff to say that the request had been sent to BOP's component offices and that it was on the "complex" track and would take some time to complete.

(30)     Plaintiff informed Ms. Bowe that the request had been granted expedited processing, and in response she noted that the "wires had been crossed" and that Mr. Stroble would follow up by phone within 24 hours.

(31)     Mr. Stroble never followed up, nor did he respond to a voicemail plaintiff left for him on May 18, 2017.

(32)     On May 18, 2017, plaintiff left a voicemail with Ms. Jeanetta M. Howard of OLC inquiring as to the status of the request, but she has not returned plaintiff's phone call.

(33)     On May 22, 2017, plaintiff sent a letter by email and certified mail to OLC, BOP, and OIG stating that if document production did not commence within two weeks, or a timely schedule for compliance was not agreed to within two weeks, plaintiff would file a lawsuit challenging DOJ's unreasonable delay in fulfilling its FOIA obligations. Ex. 3 (5/22/17 Letter).

(34)     On June 1, 2017, BOP attorney Michael North called plaintiff and requested that it revise its request to include the email address domain names of the individuals named in the request and the names of specific BOP employees to whom the request is directed. Plaintiff

informed Mr. North that the previous two BOP representatives with whom plaintiff had spoken

had not stated that the request need be revised in this manner. Plaintiff also informed Mr. North

that the request had been granted expedited processing by OPA, about which Mr. North asserted

that he was unaware.

(35)     On June 6, 2017, plaintiff sent a revised version of the request to BOP's North

narrowing the request to the email domain names of the specified non-government individuals.

Ex. 4 (6/6/17 revised BOP request).

(36)     On June 9, 2017, plaintiff sent an email to BOP's North inquiring as to the status

of the request.

(37)     On June 12, 2017, BOP's North replied, "Your revised request is being processed

on our expedited track. We are still gathering records responsive to your request. I am hopeful to

have all responsive records in hand by the end of next week, at which time we will have a better

feel for the time needed to process the records."

(38)     To date, defendant and its components have not produced any documents in

response to plaintiff's request described in paragraphs 18, 23, and 35. OLC and OIG have not

informed plaintiff of a reasonable anticipated date for the completion of the processing of the

requests. And although BOP has provided several updates, none of those updates has included

even a basic estimate of when production of documents might begin.

(39)     DOJ's delay—and OLC's projection that *expedited* processing will take until the

*end of the calendar year*—contravenes the grant of expedited processing, which requires DOJ to

give plaintiff's request "priority" and process it "as soon as practicable." 28 C.F.R. § 16.5(e)(4).

(40)     Moreover, even in the absence of the grant of expedited processing, DOJ has

exceeded the generally applicable twenty-day deadline for the processing of *any* FOIA request.

(41)   Plaintiff has exhausted the applicable administrative remedies with respect to all of its FOIA requests referenced herein. *See* 5 U.S.C. § 552(a)(6)(C)(i).

(42)   Defendant has wrongfully withheld the requested records from plaintiff.

## CAUSES OF ACTION

### Violation of the Freedom of Information Act for Failure to Expedite Processing

(43)   Plaintiff repeats and realleges paragraphs 1-42.

(44)   Defendant has violated FOIA and DOJ regulations by failing to actually expedite the processing of plaintiff's FOIA request despite granting expedited processing.

(45)   Plaintiff has exhausted the applicable administrative remedies with respect to defendant's failure to follow through with its grant of expedited processing because there is no administrative process to challenge defendant's failure to comply with its own decision to *grant* expedited processing.

(46)   Plaintiff is entitled to injunctive relief with respect to the expedited processing of the requested agency records.

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

(47)   Plaintiff repeats and realleges paragraphs 1-42.

(48)   Defendant has wrongfully withheld agency records requested by plaintiff by failing to comply with the statutory time limits for the processing of FOIA requests.

(49)   Plaintiff has exhausted the applicable administrative remedies with respect to defendant's failure to comply with the applicable time limits.

(50)   Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

WHEREFORE, plaintiff requests that this Court:

(1)      order defendant and its components to process immediately the requested records

in their entirety, with all processing fees waived;

(2)      order defendant and its components, upon completion of such expedited

processing, to disclose the requested records in their entirety to plaintiff;

(3)      award plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4)      grant such other relief the Court may deem just and proper.


Dated: June 15, 2017                              Respectfully submitted,


                                                  /s/ Paul M. Smith
                                                  PAUL M. SMITH
                                                  DC Bar No. 358870
                                                  ADAV NOTI
                                                  DC Bar No. 490714
                                                  MARK P. GABER
                                                  DC Bar No. 988077
                                                  Campaign Legal Center
                                                  1411 K Street NW, Suite 1400
                                                  Washington, DC 20005
                                                  (202) 736-2200

                                                  *Counsel for Plaintiff Campaign Legal Center*